

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
for the

Northern District of Illinois

Eastern Division

# FILED

JUN 03 2024

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Nina Watts, on behalf of herself individually and all
other similar situated,

_____

**Plaintiff(s)**
*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*

–v–

Blackstone Real Estate Income Trust, Inc (BREIT) et
al., and
Pathlight Property Management (Pathlight) et al.,

_____

**Defendant(s)**
*(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case 1:24-cv-04559

Judge Sara L. Ellis
Magistrate Judge Keri L. Holleb Hotaling
RANDOM / Cat 1

Jury Trial: *(check one)* ☑ Yes ☐ No

## COMPLAINT FOR A CIVIL CASE

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if
needed.

| | |
|---|---|
| Name | Nina Watts |
| Street Address | 170 Sparrow LN |
| City and County | Bolingbrook, Will |
| State and Zip Code | Illinois, 60490 |
| Telephone Number | 815-980-6061 |
| E-mail Address | ninawatts14@att.net |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an
individual, a government agency, an organization, or a corporation. For an individual defendant,
include the person's job or title *(if known).* Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

| | |
|---|---|
| Name | Blackstone Real Estate Investor Trust (BREIT) et al., |
| Job or Title *(if known)* | Chief Legal Officer |
| Street Address | 345 Park Avenue |
| City and County | New York, Manhattan County |
| State and Zip Code | New York, 10154 |
| Telephone Number | (212) 583-5000 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Pathlight Property Management (Pathlight) et al., |
| Job or Title *(if known)* | Chief Legal Officer |
| Street Address | 6500 International Parkway, Suite 1100 |
| City and County | Plano, Colin County |
| State and Zip Code | Texas, 75093 |
| Telephone Number | (469) 613-0500 |
| E-mail Address *(if known)* | notices@homepartners.com |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question                  ☑ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
1. Dodd-Frank Wall Street Reform and Consumer Protection Act, Subtitle B
2. Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq
3. Consumer Financial Protection Act (CFPA)
4. Deceptive Acts and Practices (UDAP) statute, 15 U.S.C. § 45,
5. Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.
6. Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq.
7. Fair Housing Act, 42 U.S.C. § 3601 et seq

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* Nina Watts _____ , is a citizen of the State of *(name)*   Illinois _____ .

b.    If the plaintiff is a corporation

The plaintiff, *(name)*  N/A _____ , is incorporated under the laws of the State of *(name)* _____ ,

and has its principal place of business in the State of *(name)* _____

_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* N/A _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

b. If the defendant is a corporation

The defendant, *(name)* Pathlight Property Management , is incorporated under

the laws of the State of *(name)* California , and has its

principal place of business in the State of *(name)* Texas

Or is incorporated under the laws of *(foreign nation)* ,

and has its principal place of business in *(name)* .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

The defendants' unfair and deceptive practices, the plaintiffs were forced to withhold rent to demand the defendants repair pre-existing property damages. The defendants' lease agreements contained adhesive provisions that left the plaintiffs with no recourse to address the disrepair. This dispute over $79,000+ in rent, fees, and damages is the amount in controversy. the plaintiffs seek compensation over $79,000+ in rent, fees, and damages for the defendants' breach of the implied warranty of habitability and other unlawful conduct.

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

ThePlaintiff alleges that the Defendants, Blackstone Real Estate Investor Trust, (BREIT) and Pathlight Property Management, have engaged in a pattern of unfair, deceptive, and abusive practices in their management of rental properties, in violation of several federal consumer protection laws.
2. The Plaintiff claims that the Defendants have violated the Unfair and Deceptive Acts and Practices (UDAP) statute, 15 U.S.C. § 45, through their unfair, deceptive, and abusive practices in residential rental property management, maintenance, lease provisions, and eviction processes.
(cont. on attached complaint pages)

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Ordering Defendants to immediately stop all legal or eviction processes they have implemented against any and all residents until a thorough, independent audit is conducted by an outside agency not owned by any of Defendants' investors, partners, or subsidiaries

Ordering Defendants to waive all amounts they currently claim or may claim in the future for rent, fees, and property damage costs against Plaintiffs and class members.
(cont. on attached complaint pages)

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

      b.    If the defendant is a corporation

          The defendant, *(name)* <u>Blackstone Real Estate Investor Trust (E</u> , is incorporated under

          the laws of the State of *(name)* <u>Maryland</u> , and has its

          principal place of business in the State of *(name)* <u>New York</u> .

          Or is incorporated under the laws of *(foreign nation)* _____ ,

          and has its principal place of business in *(name)* _____ .

        *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.    The Amount in Controversy

        The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

        The defendants' unfair and deceptive practices, the plaintiffs were forced to withhold rent to demand the defendants repair pre-existing property damages. The defendants' lease agreements contained adhesive provisions that left the plaintiffs with no recourse to address the disrepair. This dispute over $79,000+ in rent, fees, and damages is the amount in controversy. the plaintiffs seek compensation over $79,000+ in rent, fees, and damages for the defendants' breach of the implied warranty of habitability and other unlawful conduct

## III.  Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

The Plaintiff alleges the Defendants engaged in unfair, deceptive, and abusive practices, including promising move-in or inspection passed to low-to-middle class citizens who were then evicted or threatened with eviction, requiring plaintiffs to pay for pre-existing repairs, and displacing plaintiffs into homelessness. The monetary impact per plaintiff is at least $75,000 + due to illegal rent, improper fees, and legal costs, entitling plaintiffs to substantial damages.

(See attached additional pages for each claim in separate paragraphs)

## IV.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Ordering Defendants to immediately stop all legal or eviction processes they have implemented against any and all residents until a thorough, independent audit is conducted by an outside agency not owned by any of Defendants' investors, partners, or subsidiaries

(See attached additional pages for each relief in separate paragraphs)

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    06/03/2024

Signature of Plaintiff    *Nina Watts*

Printed Name of Plaintiff    *Nina Watts*

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Street Address    _____

State and Zip Code    _____

Telephone Number    _____

E-mail Address    _____

# United States District Court

for the

**Northern** District of Illinois

**Eastern** Division

| | | |
|---|---|---|
| Nina Watts, on behalf of herself individually and all other similar situated, | ) ) ) ) | 1:24-cv-04559<br>Judge Sara L. Ellis<br>Magistrate Judge Keri L. Holleb Hotaling<br>RANDOM / Cat 1 |
| <u>Pro Se Plaintiff</u> | | |
| | | **Jury Trial: DEMANDED** |
| v. | ) | |
| Blackstone Real Estate Income Trust, Inc et. al (BREIT et al) and Pathlight Property Management et al., | ) | |
| <u>Defendant</u> | ) ) | |

## CLASS ACTION COMPLAINT

Nina Watts, individually, proceeding Pro Se, on behalf of herself and on behalf of others similarly situated, for her complaint, states and alleges as follows:

### INTRODUCTION

1. At the foundation of landlord-tenant law, the implied warranty of Covenants of Habitability in Illinois and other states unequivocally places the responsibility

for ensuring that the homes they rent are in "reasonable repair" and in compliance with applicable codes, ordinances, and health and safety laws squarely on the shoulders of the landlord, not the tenants.

2. On the surface of this legal principle is a clear understanding of the landlord-tenant relationship, recognizing that the landlord, as the property owner, has the means and resources to maintain their product(premises) in a safe and habitable condition for their compensation (tenants rent payments).

3. Beneath the surface of this landlord-tenant framework, however, a troubling pattern emerges – Securitization Trust Landlords (STLs)[1] appear to be exploiting their contractual authority in a manner that burdens vulnerable tenants. [2]

4. These Securitization Trust Landlords (STLs) seem to have devised a questionable strategy, concealing potentially oppressive provisions within their lengthy, complex rental agreements.

5. Through these obscured contractual terms, defendants are compelling tenants to shoulder the responsibility for pre-existing property damage, a clear violation of federal statutes as well as state laws including the Illinois implied warranty of Covenants of Habitability and constituting a breach of the rental contract.

6. Furthermore, these defendants appear to be further burdening their tenants by imposing a variety of dubious fees, regardless of whether the charges are legitimately disputed.

---

[1] https://www.blackstone.com/news/press/b2r-finance-announces-first-multi-borrower-single-family-rental-sfr-securitization/ (Last visited June 2, 2024)

[2] https://www.wealthmanagement.com/sfr/sfr-investors-dispute-resident-lawsuits-claim-bad-management-practices (Last visited June 2, 2024)

7. This systematic practice fundamentally undermines the principles of fairness and transparency that should define the landlord-tenant relationship. "Tenants, who are often in a position of relative powerlessness, should be able to rely on the legal protections afforded by the federal Statues and Illinois implied warranty of Covenants of Habitability, which are designed to ensure safe and livable conditions, rather than facing the arbitrary imposition of unjustified financial obligations, exploitation, and preventing tenants from performing their rental obligations, or making it more difficult for them pay their month rental fee. - thereby upholding the fundamental principle of habitable housing."

## PARTIES

8. Plaintiff Nina Watts is an adult individual residing in Bolingbrook, Illinois and is a citizen of the State of Illinois.

9. Defendant Blackstone Real Estate Investor Trust, Inc (BREIT et al) is a corporation incorporated in the State of Maryland with its principal place of business located in New York, New York.[3]

10. Defendant Pathlight Property Management is a corporation incorporated in the State of California with its principal place of business located in the State of Texas.[4]

11. Upon information and belief, Defendant Blackstone Real Estate Investor Trust Inc (BREIT et al) or one of its subsidiaries operates and purchases homes through separately incorporated securitization investor portfolio d/b/a single-family rental limited liability companies (LLCs) in each state where it

---

[3] https://www.blackstone.com/the-firm/our-offices/#:~:text=345%20PARK%20AVENUE,NEW%20YORK%2C%20NY%2010154 Last visited June 2, 2024
[4] https://www.bing.com/alink/link?url=https%3a%2f%2fpathlightmgt.com%2f&source=serp-local&h=QHxBNfoRrVUbc8TzyWCqGBekbQiJkROQtK%2faoCbFgwU%3d&p=lw_tp&ig=422D58D6CEAE40468B8CD59C32ACBE87&ypid=YN873x13442873353887955873 Last visited June 2, 2024

conducts business, including Illinois. [5]

12.    Defendant Pathlight Property Management (the agent, servant, employee, alter ego, or joint venturer of incorporated securitization investor portfolio d/b/a landlords) is alleged to be a member of those LLCs. [6]

13.    Defendants Blackstone Real Estate Investor Trust Inc (BREIT et al), and Pathlight Property Management and these other LLCs, were at all relevant times the agent, subsidiary, servant, employee, alter ego, and/or joint venturer of the defendant Blackstone Inc, et al'., Trust, and acted within the course of such agency, employment, alter ego relationship, and/or furtherance of the joint venturer, with the permission and consent of each of the other Defendants.[8]

## JURISDICTION AND VENUE

14.    This Court has original subject matter jurisdiction over this controversy pursuant to the Diversity of Citizenship, Amount in Controversy, and Costs ("DOCAICC") provision of 28 U.S. Code § 1332(d)(2)(A). Under this statute, corporations are considered citizens of their state of incorporation and their principal place of business.

15.    This Court has original subject matter jurisdiction over this controversy pursuant to the Diversity of Citizenship, Amount in Controversy, and Costs ("DOCAICC") provision of 28 U.S. Code § 1332(d)(2)(A). Under this statute, corporations are considered citizens of their state of incorporation and their

---

[5] https://www.blackstone.com/news/press/blackstone-real-estate-income-trust-to-acquire-home-partners-of-america/(Last Visited Jun e 2, 2024/01/2024)

[6] https://www.bing.com/alink/link?url=https%3a%2f%2fpathlightmgt.com%2f&source=serp-local&h=QHxBNfoRrVUbc8TzyWCqGBekbQiJkROQtK%2faoCbFgwU%3d&p=lw_tp&ig=422D58D6CEAE40468B8CD59C32ACBE87&ypid=YN873x13442873353887955873 (Last visited June 2, 2024)

[7] https://www.blackstone.com/ (last visited June 2, 2024)

[8] https://www.blackstone.com/news/press/b2r-finance-announces-first-multi-borrower-single-family-rental-sfr-securitization/ (Last visited June 2, 2024)

principal place of business.

16.    The aggregate amount in controversy exceeds $75,000 where the class comprises of the plaintiff and others similarly situated, who were:

   a) Promised move-in or inspection passed, but were low to middle class citizens

   b) Evicted or threatened with eviction

   c) Paid for pre-existing damage repairs

   d) Displaced, resulting in homelessness

17.    The monetary impact is at least $75,000, due to illegal rent collection, improper fees, and legal costs incurred by the affected individuals.

18.    The court has original jurisdiction over this class action lawsuit pursuant to the DOCAICC provision, which considers corporations citizens based on their state of incorporation and principal place of business.[9]

19.    The Court has original subject matter jurisdiction over this controversy pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), as the proposed class includes members from different states, providing the court with original jurisdiction over this class action.[10]

20.    The aggregate amount in controversy exceeds $5 million, where the class comprises at least 100 individuals who were:

   a) Promised move-in or inspection passed, but were low to middle

---

[9] https://constitution.congress.gov/browse/essay/artIII-S2-C1-18-1/ALDE_00013239/#:~:text=The%20current%20diversity%20jurisdiction%20provision%20is%20codified%20at,st ate%20if%20the%20amount%20in%20controversy%20exceeds%20%2475%2C000. (Last visited June 2, 2024)
[10] https://constitution.congress.gov/browse/essay/artIII-S2-C1-18-(Last visited June 2, 2024)1/ALDE_00013239/#:~:text=The%20current%20diversity%20jurisdiction%20provision%20is%20codified%2 0at,state%20if%20the%20amount%20in%20controversy%20exceeds%20%2475%2C000. (Last visited June 2, 2024)

   class citizens

  b) Evicted or threatened with eviction

  c) Paid for pre-existing damage repairs

  d) Displaced

  e) Negative credit reporting

21.  The monetary impact per lease agreement is at least $50,000 or more, due to security deposits collected for disrepair property, due to illegal rent collection, improper and disputed fees, out of pocket property repairs, tenants 'moving expense and legal costs incurred by the affected individuals.

22.  The total damages sought exceed $5 million, highlighting the substantial impact on the affected class. The court has original jurisdiction over this class action lawsuit under the Class Action Fairness Act, as the proposed class includes members from different states.

23.  Defendant Blackstone Real Estate Investor Trust Inc (BREIT et al.,) is incorporated in the State of Maryland and has its principal place of business in New York City, New York.

24.  Defendant Pathlight Property Management et al., is incorporated in the State of California and has its principal place of business in Plato, Texas.

25.  The Plaintiff is a citizen of the State of Illinois, which is different from the states of the Defendants' headquarters. Additionally, the aggregate amount in controversy exceeds the sum value of $75,000, exclusive of interests and costs, as required by 28 U.S. Code § 1332(c)(1) for diversity jurisdiction between citizens of a State and citizens or subjects of a foreign state.

26.  This Court has personal jurisdiction over Defendant Blackstone Real Estate Investor Trust Inc (BREIT et al) because it has conducted substantial business in this District and intentionally and purposefully markets, promotes, and

places its homes into the stream of commerce in this District and throughout
the United States.

27.    This Court has personal jurisdiction over Defendant Pathlight Property
Management et al., because it has conducted substantial business in this
District and intentionally and purposefully markets, promotes, and places its
homes into the stream of commerce in this District and throughout the United
States.

28.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a
substantial part of the events or omissions giving rise to the Plaintiff's claims
occurred here.

29.    The Defendants, who operate rental properties nationwide, are alleged to
have engaged in a pattern of unfair, deceptive, and abusive practices within
this judicial district.

30.    The Defendants are accused of illegally distributing tenant rental funds to
cover unauthorized fees, instead of applying the funds as intended to pay rent.

31.    The Defendants are further alleged to have failed to properly disclose and
manage the distribution of rental payments, insurance claims, and other
settlement-related charges, all while improperly receiving profits, kickbacks
and unearned service compensations in connection with the rental of their
properties, including through excessive fees and abusive eviction processes.

32.    These alleged unlawful acts, which violated numerous federal consumer
protection statutes, were carried out by the Defendants as they marketed,
advertised, leased, and sold their rental properties within this judicial district.

## FACTUAL ALLEGATIONS

### I. Defendants' Rent to Repair Scheme

26.    Defendant Blackstone Real Estate Income Trust (BREIT) is externally
managed by a subsidiary of the global investment firm Blackstone (NYSE:

BX), which has approximately $196 billion in investor capital under management for its real estate business founded in 1991.[11]

27.    Defendants has substantial experience with rental residential properties and has touted its commitment to "act responsibly to support residents" and bring "best-in-class operating standards" to the ownership and maintenance of these homes.[12] However, the Plaintiff alleges this claim is belied by the Defendants' actual practices.

28.    Defendant BREIT primarily invests in stabilized, income-generating U.S. commercial real estate across key property types, as well as real estate debt investments.

29.    Beginning in 2013, Defendant BREIT (Blackstone LP) started issuing its first single-family rental (SFR) securitizations, bundling individual rental properties into portfolios[13] used as collateral to issue mortgage-backed securities sold to investors.[14]

30.    This SFR securitization model allows large investors like pension funds and insurance companies to gain exposure to the single-family rental market on a larger scale without having to manage individual properties directly.

31.    Crucially, the "Borrower" in these SFR is group of investors of BREIT portfolio, not a homeowner. The Borrower's cash flow comes from rental payments, rather than mortgage payments. This means the income stream is highly variable, sensitive to factors like vacancy rates, market rents, and maintenance costs - unlike the more predictable fixed-income from

---

[11] https://www.blackstone.com/news/press/resource-reit-to-be-acquired-by-blackstone-real-estate-income-trust-in-3-7-billion-transaction/(Last visited June 2, 2024)

[12] https://www.blackstone.com/housing/ (Last visited June 2, 2024)

[13] https://www.breit.com/properties/(Last visited June 2, 2024)

[14]https://www.atlantafed.org/blogs/real-estate-research/2014/05/16/are-single-family-rental-securitizations-here-to-stay (Last visited June 2, 2024)

8

mortgages.[15]

32.     The defendants and their team are accused of being well-versed in real estate laws, including the implied warranty of habitability, and deliberately devising a scheme to defraud the legal system and undermine the rights of low-income and middle-class tenants.

33.     The defendants allegedly target vulnerable tenants with poor credit and limited knowledge of real estate laws, luring them into deceptive contracts that absolve the defendants of their responsibilities for property repairs and maintenance.

34.     Through deceptive practices, the defendants are accused of stripping away the legal protections afforded to tenants under the implied warranty of habitability and other laws, prioritizing profits over tenant welfare.

35.     The defendants' use of commercial lease provisions [16]in residential leases [17]is alleged to create an unbalanced and unfair situation that leaves tenants with no recourse when their homes fall into disrepair.

36.     The defendants' "absolute" lease terms "as-is" clauses, and burden-shifting maintenance and repair provisions are claimed to actively strip tenants of their legal rights and force them to bear the costs and responsibilities that should legally fall on the landlord.

37.     The defendants are accused of failing to disclose pre-existing property defects and inspection results, leaving tenants unaware of the true condition of the property they are renting.

38.     The defendants' maintenance request system, which allows them to deny

---

[15]https://ratings.moodys.com/api/rmc-documents/393138 ( Last visited June 2, 2024)
[16] https://www.jorgensenlaw.com/blog/2021/02/understanding-use-and-exclusive-use-clauses-in-commercial-leases/ (Last reviewed June 2, 2024)
[17] https://www.nolo.com/legal-encyclopedia/free-books/renters-rights-book/chapter2-4.html(Last reviewed June 2, 2024)

or cancel tenant requests, is alleged to constructively force tenants to make repairs they are not legally required to make.

39.    The defendants are accused of using the repairs and maintenance requests made by tenants as claims against the tenants' required property liability insurance, further exploiting the tenants.

40.    The defendants are accused of deploying unethical and deceptive tactics that inflicted financial harm on consumers. They promised a "Move-In ready" and "Passed Inspections" property, accepted compensation for it, yet knowingly and intentionally delivered a damaged product that failed to meet their own standards.

41.    The defendants coerced customers to sign leases based on these false promises, then leveraged one-sided lease terms to hold tenants accountable for damages, even though the property did not meet local and international maintenance codes when delivered.

42.    Further, the defendants' actions, such as imposing unlawful fees and using aggressive eviction tactics, are claimed to cause financial harm to middle- and lower-class tenants, trapping them in a cycle of hardship. Through these callous and predatory practices, the defendants are alleged to have exploited vulnerable consumers for their own financial gain.

43.    The defendants' deliberate scheme to exploit vulnerable tenants by undermining their legal rights under the implied warranty of habitability and other consumer protection laws, all while prioritizing profits over tenant welfare. The defendants' actions are alleged to have caused significant financial and legal harm to the tenants.

44.    The Plaintiff alleges that under the defendants' securitization SFR Borrower model, the burden and costs of maintaining, repairing, and insuring the rental properties have been systematically shifted away from the Defendants and

onto the tenant residents through the use of one-sided, adhesive form contracts. This alleged practice undermines the Defendants' claims of responsible ownership and support for residents.

II. **Defendants Target Vulnerable Demographics and Limit Housing Choices**

45.    The Defendants either own, operate, and manage single-family residential homes, soliciting to individuals in three primary demographics: (1) low to middle-class income, (2) persons desiring to live in a single-family home but lacking the creditworthiness to obtain a mortgage, and (3) persons who want to rent a single-family home but are "uncertain" about home ownership.[18]

46.    Over time, the Defendants have displaced individual home buyers (or individual landlords and property owners) not only in housing markets decimated by foreclosure, but also in healthy urban, suburban, and exurban residential real estate markets. [19]

47.    Instead of owner-occupied homes, these institutional investors are converting properties into rental units, contributing to rising home and rents prices in many areas and making it more difficult for individual buyers, particularly first-time and lower-income buyers, to purchase homes.

48.    The Defendants target these demographics through marketing to real estate agents and through online and print advertisements promoting the availability of homes.

49.    The Defendants market themselves as a joint entity, with the BREIT website containing the Home Partners of America logo, and the Pathlight website also displaying the Home Partners of America logo, demonstrating their interlocking relationship[20].

---

[18] https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4269561 (June 2, 2024)
[19] https://www.blackstone.com/wp-content/uploads/sites/2/2022/01/Bloomberg_Blackstone-to-Spend-1-Billion-Offering-Tenancts-Reduced-Rents_01142022.pdf (June 2, 2024)
[20] https://www.blackstone.com/housing/home-partners-of-america/ (June 2, 2024)

50.     Defendant Pathlight Property Management is the exclusive property manager of the single-family rental (SFR) portfolio properties for Defendant BREIT's securitization investors, who are referred to as "SFR Borrowers."

51.     The Defendants claim in their form documentation that they are purchasing properties specifically selected by prospective tenants prior to rental, but the Plaintiff alleges the Defendants (either wholly or through their alter ego LLCs) likely already own the homes. A recent search revealed the Defendants have available rental homes in over 80 combined markets across the United States.

52.     Customers initiate the process by responding to a solicitation advertisement from the Defendants or their alter ego LLCs, which were at all relevant times the agent, subsidiary, servant, employee, or joint venturer of the Defendants.

53.     After the customer completes a lease to own or rental application along with a credit report and work history, the Defendants, or their alter ego LLCs, refer the potential tenants to one of their many authorized real estate agents who unilaterally determine the types of houses, locations, and specific properties the tenants are allowed to consider, severely limiting the housing options available to the tenants.

54.     Once approved, the defendants request the customer to wire the non-negotiated amount to and listed account and then email them the proof of paid transactions number. Once verified, the defendants or their alter ego LLCs agent, employee or joint venturer sends their standard lease for the tenant to review and sign.

55.     The defendants are accused of deliberately targeting middle-class and lower-class consumers, exploiting their relative lack of financial and educational resources. The defendants allegedly recognized these individuals would be less likely to articulate or contest the defendants' unfair lease terms,

given the defendants' team of real estate legal professionals.

56.     Recognizing this vulnerable group as easier targets, the defendants are claimed to have knowingly and intentionally taken advantage of customers who were not intellectually equipped to challenge the defendants' practices. Through these predatory actions, the defendants are alleged to have prioritized profits for themselves and their investors over the wellbeing of the very consumers they were entrusted to serve.

## III. Defendants Impose Onerous Terms and Conditions on Tenants

57.     After receiving the potential tenants' rental funds, the property is then assigned to one of BREIT's institutional investors, referred to as "SFR Borrowers."

58.     Potential tenants, including the Plaintiff, are assigned to one of the Defendants' exclusive property management teams, responsible for all rental-related matters, account funds management, and maintenance and repair management for the duration of the rental agreement term.

59.     The Defendants provide potential tenants, including the Plaintiff, with lengthy leases via email from Defendant Pathlight Property Management, on their alter ego/Home Partners of America letterhead, listing the Defendants as the landlord and property manager responsible for all residential rental property management, including maintenance, repairs, tenant account ledgers, and property claims submissions.

60.     The Defendants lead potential tenants, including the Plaintiff, to believe the homes they are renting or leasing to own would undergo a purchase inspection and a city inspection prior to the tenants' move-in to ensure the property meets all rental standards and any damage is repaired. However, the Defendants do not share the results of these inspections with the tenants.

61.     Despite these representations, the Defendants require tenants to enter

unconscionable contracts that purport to waive and modify the warranty of habitability through various commercial rental lease provisions, without providing a complete list of the tenant's maintenance and repair obligations.

- The Tenant agrees that (a) it is leasing the Premises in its "AS-IS, Where-Is, With All Faults" conditions as of the Effective Date and specifically and expressly without any warranties, representations or guarantees, either express or implied, as to its condition, fitness for any particular purpose, merchantability or any other warranty of any kind, nature, or type whatsoever from or on behalf of the Landlord, and (b) except as may be required by Applicable Laws, Landlord has no obligation to perform any work, supply any materials, incur any expense or ,make any alterations or improvement to any portion of the Premises",
- "Tenants shall, at Tenants' expense, maintain the Premises (including all appliances, systems and fixtures located thereon)
- "Tenant agrees to pay (a) all repairs, maintenance or replacement required to the Premises, including the wall, windows, storm(sic) doors/windows and screens, ceilings, paint, plastering, whatever damages or injury to the same shall have resulted from misuse, waste or neglect by the tenant"
- Tenants acknowledges that any damages to the Premises beyond normal wear and tear which is not so noted on the Condition form returned by the Tenant will be presumed to have been caused by Tenant

62.     The Defendants also fail to fully disclose the additional fees tenants will be required to pay under the lease, including the cost of insuring the Defendants'

property, HVAC upkeep charges, and other lease administration expenses.

63.     The Defendants set the monthly base rent for each house and admit they do not negotiate these amounts with tenants, despite representing that the rent was agreed upon with the understanding that the tenant would be responsible for the property's maintenance needs.

64.     The Defendants states in their lease that the "Tenants confirms that

65.     At the core of the issue, the Defendants' marketing is designed to induce and convince lower- and middle-income customers with poor credit that they are renting a specially chosen, "qualified" home that is different from a traditional rental. However, the Defendants then force these consumers to agree to take on substantial homecare burdens through their unconscionable and adhesive leases containing hidden commercial property provisions.

66.     Despite the Defendants' efforts to establish an extra-legal relationship with their tenants through these elaborate, lengthy contracts, they cannot write their way out of their statutory legal obligations under the laws of the United States.

67.     Furthermore, the Defendants' displacement of lower and middle-class renters and homebuyers suggests their practices have undermined the socioeconomic mobility of marginalized groups.

**IV. Defendants' Fee Stacking for Profit scheme**

68.     The defendants require tenants to obtain renters insurance that names the defendants and POPIC LLC as additional interested parties. Tenants are forced to participate in the defendants' "Master Resident Liability Program" (MRLP) if they do not provide proof of their own qualifying insurance.

69.     The MRLP costs tenants $13 per month, which is considered "additional rent" paid to the defendant landlord. This MRLP fee is an insurance premium

paid to the defendants' captive insurer, POPIC LLC, but the defendants do not disclose how the funds are used.

70. The defendants employ a third-party utility management company, Conservice, to bill tenants for utilities. The defendants also charge tenants a "Utility Billing Service Fee" (UBSF) to cover the administrative costs of this arrangement, but this fee is not properly disclosed.

71. The defendants require tenants to participate in an HVAC filter replacement program, charging $15 per month, which includes a markup that is not disclosed to tenants.

72. The defendants charge tenants "no-show" fees of $75 per incident if maintenance technicians are unable to access the property, even if the tenant was present or did not schedule the appointment.

73. The defendants require tenants to pay for the landlord's attorneys to review their accounts to determine if the tenant is in default, even if no legal action is taken.

74. These various fees and provisions in the defendants' leases are alleged to be deceptive, unconscionable, and in violation of consumer protection and landlord-tenant laws, as they shift costs and responsibilities onto the tenants that should be borne by the landlord.

75. The Plaintiff is accusing the defendants of devising a multi-faceted scheme to exploit vulnerable tenants through a range of unfair, deceptive, and unlawful practices related to insurance, utilities, fee stacking, maintenance, eviction, and legal fees.

## V.

## Plaintiffs' Experiences

## Nina Watts

76.  Nina Watts, the plaintiff, selected a 3-bedroom, 3-bathroom home in Joliet, Illinois from the defendants' rental program, believing it would be a high-quality, move-in ready home based on the defendants' representations. She paid the required move-in fees of $5,992.50.

77.  However, just days before the lease start date of June 28, 2022, the defendants informed Watts that the Joliet property was no longer available and asked her to select a different property. After a frustrating search, Watts was offered a 4-bedroom, 2-bathroom home in Bolingbrook, Illinois for $3,095 per month. The defendants, through their agent Margaret L., assured Watts that the Bolingbrook property would be ready for her occupancy by July 24, 2022.

78.  When Watts arrived at the Bolingbrook property on July 24, 2022, she discovered significant pre-existing issues, including missing walls, ceilings, floors, and a bug infestation. The property was not in the move-in ready condition the defendants had promised. Watts immediately reported the issues to the defendants and provided photo documentation, but the defendants were slow to respond and when they did respond to the plaintiff the defendants quoted the lease provisions and failed to make the repairs.

79.  Over the following months, the defendants continued to add various fees and charges to Watts' account, including:

   a) A "Recover" Program fee, a recurring utility recovery fee paid to the defendants' exclusive utility service provider, Conservice.

   b) A "Utility Billing Service Fee" (UBSF) to cover the administrative costs of hiring a third-party utility management company.

   c) A mandatory $15 per month "HVAC Filter Program" that included an undisclosed markup.

   d) "No-Show" fees of $75 per incident if maintenance technicians were

unable to access the property, even if Watts was present or did not schedule the appointment.

e) Legal fees for the defendants' attorneys to review Watts' ledger, on multiple occasions regardless of whether any legal action was taken.

f) Charges from the defendants' utility server, for under "Conservice" various types of recover fees.

80. The defendants failed to properly disclose the nature, purpose, and details of these various fees and charges added to Watts' account during her tenancy.

81. Watts attempted to dispute the excessive fees and charges, but the defendants obstructed her efforts by creating a complex web of shell companies and subsidiaries. The defendants' agents informed Watts that she must contact various departments and entities, such as Conservice, POPIC, and the defendants' legal team, to address the issues, making it nearly impossible for Watts to effectively challenge the fees.

82. Furthermore, the defendants deliberately diverted Watts' rental payments to cover these unauthorized fees and charges, rather than applying the funds towards her rent as intended. The defendants then threatened Watts with eviction for nonpayment of rent, despite her attempts to resolve the issues.

83. The defendants' actions demonstrate a pattern of practices designed to exploit vulnerable tenants. They combined provisions from both residential and commercial leases into their standard form to coerce and force Watts to comply with their demands or face eviction, despite the defendants' own failures to maintain the property and their deceptive practices.

84. The defendants' deliberate scheme to mislead Watts with false verbal promises, coupled with their abuse of the legal system to threaten and initiate eviction proceedings, further illustrates their predatory behavior. Watts believes the defendants' conduct was part of a systemic and organized effort

to defraud and deceive tenants, causing significant distress, customer character ruin, homeless and financial hardship for her and her family.

## VI. Numerous Tenants Nationwide Complain.

85.    Nina Watts, the plaintiff, is not alone in her experience with the defendants, Pathlight Property Management. Across the country, numerous tenants have lodged complaints against Pathlight through social media, the Better Business Bureau, and housing court litigation, regarding issues such as failure to return security deposits, provide move-in ready properties, mismanage tenant accounts, improperly stack fees, and fail to maintain their properties in reasonable repair.

86.    Pathlight was initially accredited by the Better Business Bureau in December 2016, but its accreditation was revoked in 2022, though it has since been reinstated. The Better Business Bureau's customer review page, however, continues to be flooded with a litany of complaints - 752 complaints closed in the last 3 years and 222 complaints closed in the last 12 months.

87.    For example, the Better Business Bureau contains the following litany of recent complaints:[21]

> *April 7, 2024*
>
> *I moved in on 4/1/2024. I have contacted Pathlight numerous times and they make excuses of why they cant fix anything. 1) I have a sliding glass door that will not lock which is a security issues. They will not even send someone to fix it tell 4/12/2024 so I am supposed to sleep with door that does not lock. 2) when I looked at this house they told me everything was working, but upon moving in the water softener does not work. I called them to*

---

[21] https://www.bbb.org/us/tx/plano/profile/property-management/pathlight-property-management-0875-90620230/complaints  (Last viewed on June 2, 2024)

*let them know and they are trying to say I have to fix it. I moved in because that was one of the perks. They completely did bait and switch.3) The washer had not worked since I moved in. I am unable to do laundry. No response.4) I have also noticed shingles that are missing and when I bring things to their attention they want me to fix it. I rent from them, and this is unacceptable.*

April 08, 2024

**In November Pathlight contacted me stating that there was a fee of $1200 being charged due to *** violations that occurred in July. I was never contacted in July about these issues that were written up by ***, these were sent directly to Pathlight. The notice states that once charge is applied to property it will not be reversed. The *** department at Pathlight reached out to us after it was already applied to our account, and requested pictures of the issues. We sent pictures showing all items were fixed unbeknownst to us that it was even an issue. *** had did their check in July and received no response from Pathlight. If Pathlight would have contacted me at that time we could have resolved this immediately. In July 2023, we hired a landscape company due to my husband's working more hours. During this transition that is when *** did their inspection and found violations, which was fixed a week later from what Pathlight said the original complaint was. Pathlight has been unwilling to work with this fee, and have charged late fees on top of the 1200 fee.**

Rabab April 17, 2024 "The practices employed by Pathlight in relation to rent-to-own agreements present significant legal concerns, particularly for disabled individuals, given their persistent imposition of indefinite, unethical fees. Following an eviction notice, Pathlight demanded payment of $16k, a demand further exacerbated by their actions and the representation provided by their legal affiliates at Atlas Law, whose amateur status adds to the complexity of the situation and the way we were handled. Upon being directed to the courthouse, we provided evidence of forthcoming payment to Path life to halt the eviction

20

proceedings. Prior to remitting any funds, we diligently sought clarification from Atlas Law regarding additional fees preceding the eviction payment, to which they confirmed that no additional charges would be incurred, instructing us to direct the funds to Pathlight Despite fulfilling the $16k obligation, we sent Pathlight a cashier's check exceeding this amount by an additional $18k, intending the surplus to cover the subsequent months' rent. However, we now find ourselves embroiled in a dispute over additional legal fees debited from our account two months subsequent to the initial resolution of the eviction matter. These actions, characterized by their unethical and unprofessional nature, flagrantly violate legal protections afforded to disabled renters, including those enshrined in the Fair Housing Act, which unequivocally prohibits discrimination based on disability, gender, or race. Pathlight's blatant disregard for such legal safeguards, coupled with their prioritization of extracting unethical fees at the expense of resident's rights, renders them an unsuitable option for those considering rent-to-own solutions. I am fully committed to diligently assembling and submitting all pertinent documents in support of our claim. Despite settling all fees related to an illegal eviction and adhering to the city's eviction notice requirements, Pathlight is now imposing additional charges on residents. Following discussions with Pathlight and their hired lawyer, I was instructed to pay $16k, yet I ended up paying $18k. Surprisingly, two months later, I was hit with a legal fee.

### April 30, 2024

*Biggest Scammers in history!! DO NOT APPLY OR USE THIS COMPANY*

*months subsequent to the initial resolution of the eviction matter. These actions, characterized by their unethical and unprofessional nature, flagrantly violate legal protections afforded to disabled renters, including those enshrined in the Fair Housing Act, which unequivocally prohibits discrimination based on disability, gender, or race. Pathlight's blatant disregard for such legal safeguards, coupled with their prioritization of extracting unethical fees at the expense of resident's rights, renders them an unsuitable option for those considering rent-to-own solutions. I am fully committed to diligently assembling and submitting all pertinent documents*

21

*in support of our claim. Despite settling all fees related to an illegal eviction and adhering to the city's eviction notice requirements, Pathlight is now imposing additional charges on residents. Following discussions with Pathlight and their hired lawyer, I was instructed to pay $16k, yet I ended up paying $18k. Surprisingly, two months later, I was hit with a legal fee.*

88.    Additionally, a private Facebook group called "Pathlight Property Management Problems" contains over 1,000 members, further demonstrating the widespread issues tenants have experienced with the defendants. Pathlight has also been subject to numerous suits in housing or small claims courts nationwide, as well as additional actions commenced by the undersigned counsel on behalf of their clients in Illinois, Minnesota, Washington, and Colorado.[22]

89.    As reported by numerous tenants, the defendants often ignore repair requests or wait an inordinate amount of time before addressing them, directly contradicting their representations that they will quickly make repairs and be available 24/7. These failures to repair or agree to repair demonstrate that the defendants' representations misrepresent the level of service they provide.

90.    Watts' experience, as outlined in the previous sections, is not an isolated incident, but rather part of a broader pattern of the defendants' exploitative and abusive practices towards vulnerable tenants across.

## CLASS ACTION ALLEGATIONS

91.    The Plaintiff brings this action on behalf of herself, and all others similarly situated ("the Class") pursuant to Federal Rule of Civil Procedure 23(b)(2) and

---

[22] https://www.facebook.com/groups/555948639354337/people/

(b)(3). The Plaintiff's experiences, as detailed in the preceding sections, are representative of the broader pattern of the defendants' exploitative and abusive practices towards vulnerable tenants across the country.

92.    The proposed Class is defined as: All persons who have paid rent and other fees to the defendants, Pathlight Property Management and Blackstone Real Estate Investment Trust (BREIT), pursuant to a rental lease agreement in the state of Illinois.

93.    The requirements for class certification under Rule 23 are met as follows:

a) Numerosity: The members of the Class are so numerous that joinder of all members in one proceeding would be impracticable, as the Plaintiff is informed and believes there are hundreds of persons who have entered into rental agreements with the defendants.

b) Commonality: There are common questions of law and fact common to the Class, including:

i.    Whether the defendants have illegally incorporated commercial real estate provisions into their residential leases, creating unconscionable adhesion contracts that mislead tenants and violate state laws.

ii.    Whether the defendants have failed to provide habitable homes in full compliance with the law.

iii.    Whether the defendants have deliberately targeted lower-income and middle-class communities with these deceptive and unfair lease practices.

iv. Whether the defendants have engaged in predatory or exploitative practices that specifically target vulnerable lower-income and middle-class tenants.

v. Whether the defendants have used the threat of eviction or the eviction process as a means to coerce tenants into accepting the unconscionable lease provisions or paying the illegal fees.

vi. Whether the defendants have abused the legal system by filing frivolous or retaliatory lawsuits against tenants who have attempted to assert their rights or challenge the lease terms.

vii. Whether the defendants have attempted to shift the responsibility for repairing pre-existing damages to the tenants, in violation of the implied warranty of habitability.

viii. Whether the tenants have incurred any out-of-pocket expenses or suffered any other damages as a result of the defendants' failure to repair pre-existing damages in a timely manner.

c. Typicality: The claims of the Plaintiff are typical of the claims of the members of the Class, who have entered into rental agreements with the defendants and are now contractually bound to the misleading and unlawful terms of those agreements.

d. Adequacy: The Plaintiff will fairly and adequately represent the members of the Class and proceed Pro se with this suit without competent and experienced counsel in class action and complex litigation.

94. The requirements of Rule 23(b)(2) are met, as the Plaintiff seeks injunctive and declaratory relief to address the defendants' unlawful conduct.

95.    The requirements of Rule 23(b)(3) are also met, as the common questions of law and fact predominate over any individual issues, and a class action is superior to other methods for the fair and efficient adjudication of this controversy.

96.    The Plaintiff's claims arise under various federal and state laws, including the Unfair Deceptive Acts and Practices (UDAP) statute, the Fair Housing Act, the Fair Debt Collection Practices Act (FDCPA), the Racketeer Influenced and Corrupt Organizations Act (RICO), and the Real Estate Settlement Procedures Act (RESPA).

97.    The defendants' conduct, as exemplified by the Watts case and the numerous complaints from other tenants, reflects a systemic and organized effort to defraud and deceive tenants through deceptive and abusive practices, causing significant distress and financial hardship for countless individuals and families.

## Count I:

## Violations of the Unfair Deceptive Acts and Practices (UDAP) Statute15 U.S.C. § 45

98.    Plaintiff re-alleges all prior paragraphs of this complaint.

99.    Unfair Deceptive Acts and Practices (UDAP) statute, 15 U.S.C. § 45. States "it is unlawful for any provider of consumer financial products or services or a service provider to engage in any unfair, deceptive, or abusive act or practice"

100.   The defendants' conduct, as exemplified by the experiences of Nina Watts and the numerous complaints from other tenants, constitutes multiple violations of the Unfair Deceptive Acts and Practices (UDAP) statute, 15

U.S.C. § 45. The defendants have engaged in unfair, deceptive, and abusive practices in their rental property management, property maintenance, property conditions, lease provisions, and eviction processes, which have caused significant harm and distress to the plaintiff and other class members.

101. Specifically, the defendants have:

    i. Misrepresented the condition and habitability of their rental properties, leading tenants to believe the homes would be move-in ready when they were not.

    ii. Imposed a web of undisclosed, excessive, and unauthorized fees, including "Recover" program fees, utility billing service fees, HVAC filter program fees, and "no-show" fees, which were not properly disclosed to tenants.

    iii. Diverted tenants' rental payments to cover these illegal fees and charges, rather than applying the funds towards rent as intended, and then threatened tenants with eviction for nonpayment of rent.

    iv. Failed to make timely and adequate repairs to their properties, despite tenants' repeated requests and the defendants' own acknowledgment of the pre-existing issues.

    v. Obstructed tenants' efforts to dispute the excessive fees and charges by creating a complex corporate structure and requiring tenants to contact various subsidiaries and departments.

102. The defendants' unfair, deceptive, and abusive practices have caused significant financial harm and distress to the plaintiff and other class members, violating the UDAP statute.

## Count II:
### Violations of the Fair Housing Act 42 U.S.C. § 3601 et seq

103. Plaintiff re-alleges all prior paragraphs of this complaint.

26

104.   Fair Housing Act, 42 U.S.C. § 3601 et seq., states "it unlawful for any lender to discriminate in its housing-related lending activities against any person because of race, color, religion, national origin, sex, handicap, or familial status."

105.   The defendants' negligent, fraudulent, unfair, and deceptive practices regarding their rental property management, property maintenance, property conditions, lease provisions, and eviction processes have had a discriminatory impact on the plaintiff, Ms. Watts, and other individuals who are members of a protected class under the Fair Housing Act, 42 U.S.C. § 3601 et seq.

106.   The defendants' exploitative and predatory conduct, which has disproportionately targeted lower-income and middle-class communities, has denied these vulnerable tenants' equal access to fair and decent housing, in violation of the Fair Housing Act.

**Count III:**

**Violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. § 1692 et seq**

107.   Plaintiff re-alleges all prior paragraphs of this complaint.

108.   Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., a "debt collector" is defined as: • Any person7 who uses any instrumentality of interstate commerce or mail in any business whose principal purpose is debt collection. • Any person who regularly collects, or attempts to collect, debts owed to another person.

109.   The defendants' debt collection practices, including their mismanagement of tenants' account ledgers and illegal distribution of rental funds, have violated the provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.

27

110. Specifically, the defendants have unlawfully used tenants' rental payments to cover the various unauthorized fees and charges, rather than applying the funds as intended to pay rent. This pattern of unfair debt collection practices has caused significant financial harm to the plaintiff and other class members, in violation of the FDCPA.

## Count IV:

## Violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. § 1961 et seq.

111. Plaintiff re-alleges all prior paragraphs of this complaint.

112. Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., states racketeering activity means "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical."

113. The defendants' fraudulent, deceptive, predatory, and extortionate practices to extract illegal profits from tenants' rental funds on a monthly basis, as well as their abuse of the legal process, constitute a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.

114. The defendants' systematic exploitation of vulnerable tenants through their complex web of subsidiaries, undisclosed fees, and misuse of the eviction process reflects a broader, organized scheme to defraud and deceive class members, in violation of RICO.

## Count V:

## Violations of the Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. § 2601 and 2607 et seq

115.   Plaintiff re-alleges all prior paragraphs of this complaint.

116.   Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq., states "No person shall give, and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person".

117.   The defendants have failed to properly disclose and manage the distribution of rental funds, insurance claims, and other settlement-related charges, in violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq.

118.   Additionally, the defendants have received kickbacks (Investment Profits) or unearned profit from fees in connection with the rental of their properties, including through their insurance claims, excessive fees, and eviction processes, in further violation of RESPA, 12 U.S.C. § 2607.

119.   The defendants' conduct, as exemplified by the Watts case and the numerous complaints from other tenants, reflects a systemic and organized effort to defraud and deceive tenants through deceptive and abusive practices, causing significant distress and financial hardship for countless individuals and families.

## COUNT VI

## RESCISSION

120.   Plaintiffs re-allege all prior paragraphs of this Complaint.

121.   Defendants control virtually every aspect of Plaintiffs' lease agreements, as set forth in the general allegations in paragraphs 26-75 and 91-119.

122.  Defendants' lease agreements are illegally and unfairly advantageous to Defendants through their misleading statements and deceptive practices.

123.  These practices include:

     a) Unlawful lease provisions that deceive and mislead consumers into believing they cannot negotiate their monthly rental rates, when in fact they are forced to sign agreements stating they did negotiate.

     b) Provisions that require tenants to make repairs to their rental homes because they are rented in an "AS-IS" condition or because Defendants claim the repair is "resident responsibility," in violation of the warranty of habitability.

     c) Mandatory requirements for tenants to pay for renters' insurance or use Defendants' "liability coverage" every month to cover the maintenance and physical damage to Defendants' rental homes, which is Defendants' legal responsibility under the warranty of habitability.

     d) Misleading statements and deceptive practices related to mandatory fees, where Defendants require tenants to pay certain fees or face eviction and potential homelessness, directly targeting middle- and lower-class citizens.

     e) Inclusion of both residential and commercial provisions within the same lease agreement, further obfuscating and deceiving consumers about their rights and obligations under the lease and failing to properly disclose.

124.  These practices by Defendants are designed to illegally and unfairly advantage Defendants at the expense of vulnerable tenants, in clear violation of consumer protection laws and the implied warranty of habitability.

125.  Defendants' form lease agreements are unconscionable contracts of adhesion, which are unenforceable contrary to public interest, policy, and law. These agreements deny consumers the legally cognizable warranty of habitability.

126.  As a direct result of Defendants' unlawful lease terms, Plaintiffs and class members have incurred out-of-pocket expenses for maintenance costs that should have been Defendants' responsibility. Defendants have received substantial benefits to which they have no entitlement, at Plaintiffs' and class members' expense, including maintenance costs, rent hikes, insurance premiums, and other expenses.

127.  Plaintiffs and the class are entitled to compensation for all the expenses they were illegally required by Defendants to bear, and that Defendants should have but did not pay.

## COUNT V: UNJUST ENRICHMENT

128.  Plaintiffs and the class conferred a benefit on Defendants by paying rent and the costs of maintenance that Defendants should have paid.

129.  Defendants voluntarily accepted and retained these benefits, and the circumstances are such that it would be inequitable for Defendants to retain these payments.

130.  Defendants consciously accepted the benefits that Plaintiffs and the class conferred, and these benefits were not conferred gratuitously. Plaintiffs and the class conferred these unjust benefits upon Defendants

after and as a result of Defendants' illegal misconduct as described in paragraphs 26 -75 and 91-119.

## COUNT VI: DECLARATORY RELIEF

131.  An actual controversy has arisen between Plaintiffs and the class on one hand, and Defendants on the other, relating to the following matters:

a) Whether Defendants have unlawfully imposed maintenance, repair, and payment burdens and obligations on Plaintiffs under form contracts of adhesion.

b) Whether Defendants have unlawfully failed to maintain the homes rented by Plaintiffs and the class.

c) What amounts Plaintiffs and the class are entitled to receive in compensation.

d) Whether Defendants unlawfully require tenants to procure renters' insurance to cover damage not caused by tenants to Defendants' buildings and structures, or to force-place them in Defendants' "liability coverage."

e) Whether the provisions of Defendants' form leases violate the warranty of habitability and illegally thrust the burden of repair onto the tenants.

f) Whether tenants can be forced to sign agreements stating they either negotiated the rental or purchase price of the home when, in fact, no negotiations took place.

g) Whether Defendants have mishandled tenant funds and account ledgers by adding unauthorized fees, compiling mounting hardship, and then using those tenant funds to pay Defendants' own fees instead of applying the funds to rent, in violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Subtitle B.

132. Plaintiffs and the class further seek declaratory judgment that Defendants have violated the Dodd-Frank Wall Street Reform and Consumer Protection Act, Subtitle B, through their actions detailed in the preceding paragraphs.

133. Plaintiffs and the class seek a declaratory judgment that Defendants' practices are unlawful, and that Plaintiffs and the class are entitled to recover the sums owed by Defendants.

## COUNT VII: INJUNCTIVE RELIEF

134. Defendants will continue their illegal practices, including forcing tenants to enter into and enforcing illegal contracts of adhesion, forcing them to live in homes unsuitable for habitation, fraud, misrepresentation of contractual lease terms, and deceptive practices and fraud to evict Plaintiffs and the proposed class under "failure to pay rent" provisions.

135. Plaintiffs and the proposed class have been irreparably injured and damaged, and are threatened with further injury and damage, by Defendants' tortious interference, unlawful refusal to maintain the homes the, and Defendants continued use of misleading, unconscionable lease agreements and deceptive practices.

136. Plaintiffs and the proposed class have no adequate remedy against Defendants' malpractice in maintaining the "high-quality" homes fit for human habitation, resulting in financial, emotional, and mental harm.

137. Defendants have acted, and threatened to act, on grounds generally applicable to the individual members of the proposed class, thereby making appropriate preliminary and permanent injunctive relief necessary to enjoin Defendants and their agents from continuing the unlawful practices.

138. Defendants should be ordered to:

a) Disgorge all fees in excess of those permissible under the law that they have obtained from Plaintiffs and the class as a result of collecting and distributing these illegal fees to provide the defendants a profit at the Plaintiffs and the class costs.

b) Disgorge all legally required eviction procedures and allow Plaintiffs and the class 90 days to vacate the property, waiving all past, present, and future financial obligations related to Defendants and their agents.

c) Disgorge all reporting of any negative items, amounts, or data to Plaintiffs' and the class' credit reports or public records.

d) Defendants should be ordered to provide full restitution to Plaintiffs and the class for all maintenance costs, missed work hours, fees charged, rents paid, security deposits paid, rent increases, insurance premiums, and other expenses they were unlawfully required to pay due to Defendants' illegal conduct.

e) Defendants should be ordered to reimburse Plaintiffs and the class for any moving expenses or security deposits they incurred as a result of Defendants' unlawful actions.

## PRAYER FOR RELIEF

136. Plaintiffs respectfully ask the court to award judgment against Defendants as follows:

a) that Defendants' actions constitute multiple, separate violations of the common law warranty of habitability and that Defendants' form lease agreements are void.

b) Enjoining Defendants and their employees, officers, directors, agents, successors, assignees, affiliates, merged or acquired predecessors, parents or controlling entities, subsidiaries, and all

34

other persons acting in concert or participation with them, from engaging in deceptive practices, making false or misleading statements, and breaching the common law warranty of habitability.

c) Ordering Defendants to immediately stop all legal or eviction processes they have implemented against any and all residents until a thorough, independent audit is conducted by an outside agency not owned by any of Defendants' investors, partners, or subsidiaries.

d) Ordering Defendants to waive all amounts they currently claim or may claim in the future for rent, fees, and property damage costs against Plaintiffs and class members.

e) Ordering Defendants to refrain from attaching any type of negative reporting regarding fees owed, property damage costs, unpaid rent, or any other claims against Plaintiffs and class members on their credit reports or in public records.

f) Awarding judgment against Defendants for moving expenses, security deposits, and first months' rent, as provided by applicable law or equity.

g) Awarding judgment against Defendants for restitution and disgorgement under the general.